In the Matter of JOSEPH LEWIS et al., Appellants, v. JAMES E. ALLEN, JR., as Commissioner of Education of the State of New York, Respondent.

Third Department, December 2, 1960.

448

*Martin J. Scheiman* for appellants.

*Charles A. Brind* (*John P. Jehu, Elizabeth M. Eastman* and *George B. Farrington* of counsel), for respondent.

GIBSON, J.  Petitioners appeal from an order which dismissed their petition seeking relief in the nature of mandamus (Civ. Prac. Act, § 1296, subd. 1; cf. § 1284, subd. 3) to compel respondent Commissioner of Education to rescind as constitutionally invalid a regulation recommending the use in the schools of the pledge of allegiance to the flag in the form presently in general use (Regulations of Comr. of Educ. of State of N. Y., § 150, subd. 5, as amd. Sept. 24, 1954) and to re-establish the use of the pledge in its prior form.  The regulation is said to contravene the First Amendment to the Constitution of the United States as well as section 3 of article I and section 4 of article XI of the Constitution of the State of New York.

None of the procedural or other objections raised by respondent seem to us to be vital but since we go directly to the merits we do not determine them.

The Commissioner of Education is charged with "the duty * * * to prepare, for the use of the public schools of the state, a program providing for a salute to the flag and a pledge of allegiance to the flag, for instruction in its correct use and display and such other patriotic exercises as may be deemed by him to be expedient, under such regulations and instructions as may best meet the varied requirements of the different grades in such schools." (Education Law, § 802, subd. 1.) In accordance therewith, the present amended regulation was promulgated as follows: " 5. *Pledge to the flag.* It is recommended that schools use the following pledge to the flag: ' I pledge allegiance to the flag of the United States of America and to the Republic for which it stands, one Nation, under God, indivisible, with liberty and justice for all.' " The words " under God " did not appear in the prior regulation, in which the pledge followed the form adopted by Federal enactment (U. S. Code, tit. 36, § 172), but Congress added those words to section 172 by amendment of June 14, 1954, following which and consistently therewith, the Commissioner's regulation was amended and approved by the Board of Regents in its present form.*

So far as relevant here, the First Amendment provides that " Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof "; and that interdiction is imposed upon the States by reason of the Fourteenth Amendment (*Everson* v. *Board of Educ.,* 330 U. S. 1; *Cantwell* v. *Connecticut,* 310 U. S. 296).

Appellants urge that in this case the contested regulation offends the constitutional provisions, first, as it involves " the use of the public schools — both physically and pedagogically — for the dissemination of purely religious dogma " and, second, as it imposes " an intolerable degree of compulsion upon the young children of non-believers * * * to listen to, learn and repeat thousands of time a religious concept which they repudiate and abhor."

We consider first the argument of compulsion or restraint. It was held, even before the addition of the words " under God ", that the flag salute could not be made compulsory so as to require the participation of the members of a religious sect who viewed the ceremony as a form of idolatry offensive to their tenets and beliefs. (*Board of Educ.* v. *Barnette,* 319 U. S. 624.) Respond-

---

* Differing slightly from the language of section 172 in which no comma appears in the phrase " one Nation under God ", the punctuation being deemed of some significance in the opinion of the Legislative Reference Service of the Library of Congress, appended to House Report No. 1693, May 28, 1954, of the Committee on the Judiciary.

ent freely concedes, of course, that such compulsion would infringe upon the constitutional guarantees of freedom of religion; that the freedom thus protected includes the rights of nonbelievers as of believers (cf. *Zorach* v. *Clauson,* 343 U. S. 306, 314; *Everson* v. *Board of Educ.,* 330 U. S. 1, 18, *supra*); and that the children with whom the petition is concerned cannot be compelled to recite the pledge of allegiance. His position upon that issue is stated thus: "Respondent believes that a recitation, by children of that persuasion, of the Pledge of Allegiance, omitting the words 'under God' would be in complete compliance with any rule the school could make in this respect; similarly, it would be full compliance with any such rule, if the child were not to recite at all, while remaining present, or if the child were to leave the room altogether during such recitation." Assuming for the moment that these rights conceded to dissident students be given full and complete effect, there remains no element of compulsion within the intendment of the First Amendment. Indeed, it was recently held that the imposition of similar conditions would remove all objections on constitutional grounds to the action of a local board of education requiring the recital of the so-called Regents' prayer — of religious import and significance far greater than that of the pledge of allegiance. (*Matter of Engel* v. *Vitale,* 18 Misc 2d 659, affd. 11 A D 2d 340; and, see, *Doremus* v. *Board of Educ.,* 5 N. J. 435, appeal dismissed 342 U. S. 429 as presenting no case or controversy within the appellate jurisdiction of the Supreme Court.) Upon the facts of this case, however, we find it unnecessary to remand, as was done in *Engel,* for proceedings contemplating the formal adoption of such conditions, as safeguards "intended to eliminate any element of coercion or compulsion upon the student with respect to the daily recitation of the prayer." (11 A D 2d 340, 341.) This proceeding, differing from *Engel,* is not directed against a local or other school authority which has actually required the recital of the pledge, but is addressed to a regulation purely recommendatory. We may not assume present or future action by some school authority to effectuate the Commissioner's recommendation by means recognized by the courts and by the Commissioner as deprivative of constitutional privilege. If and when that unlikely action shall occur, it may be dealt with, directly and specifically. In this situation, therefore, we find no sound basis for any claim of coercion or pressure directed toward "an establishment of religion" or interfering with "the free exercise thereof".

Appellants' additional contention that the teaching and recitation of the pledge "involve" improper use of the schools

for the dissemination of "religious dogma" seems likewise unfounded. The complete answer to this argument is to be found in the doctrine of accommodation enunciated in *Zorach* v. *Clauson* (343 U. S. 306, 313–314, *supra*). In that case it was held (p. 312) that New York, by enacting the "released time" program to permit of religious education of school children without the school, had not "made a law respecting an establishment of religion." The court (pp. 312–313) said: "There cannot be the slightest doubt that the First Amendment reflects the philosophy that Church and State should be separated. * * * The First Amendment, however, does not say that in every and all respects there shall be a separation of Church and State. Rather, it studiously defines the manner, the specific ways, in which there shall be no concert or union or dependency one on the other. That is the common sense of the matter. Otherwise the state and religion would be aliens to each other — hostile, suspicious, and even unfriendly. * * * Prayers in our legislative halls; the appeals to the Almighty in the messages of the Chief Executive; the proclamations making Thanksgiving Day a holiday; ' so help me God ' in our courtroom oaths — these and all other references to the Almighty that run through our laws, our public rituals, our ceremonies would be flouting the First Amendment."

We reach finally appellants' contention that the regulation infringes upon rights preserved by the Constitution of the State of New York. Section 3 of article I of that Constitution guarantees "free exercise and enjoyment of religious profession and worship, without discrimination or preference"; and section 4 of article XI, also cited by appellants but of doubtful relevance here, forbids the use of public money or other property in aid of any denominational school or of any school "in which any denominational tenet or doctrine is taught". From our determination that the claim of unconstitutionality under the First Amendment cannot be sustained, it follows that the regulation does not contravene the like provisions of the State Constitution.

The order should be affirmed, with $10 costs.

BERGAN, P. J., COON, HERLIHY and REYNOLDS, JJ., concur.

Order affirmed, with $10 costs.